Ladies and gentlemen, please rise. This court is now in session. Please be seated. Thank you. Court, please call the last case of the afternoon. 321-0571 HSBC Bank USA as trustee of the Fieldstone Mortgage Investment Trust, abbey by Todd Gale v. Adelaide Sestak, compound by Harris Mahoney. Counsel, you may proceed. Good afternoon. It's my privilege to appear before you. It's been a while since I've been here, about 25 years ago. Welcome back. I lost some hair. If I may, my name is Terrence Mahoney, law firm of Neville Mahoney, and I am appearing here on behalf of the pro se appellate defendant, Sestak. I filed my appearance about two weeks ago. I did so, frankly, in order to give some voice to the pro se brief filed by the party herself. In that regard, I think it's appropriate, consistent with the code of ethics, that any commentary made in the brief by the pro se defendant that uses the terms of deception or fraud, I do not advance those comments and I do not endorse them because I have not personally investigated. I have not been a part of the litigation up until two weeks ago, and I think that that is an appropriate comment on the record in that regard. Why I am here and agreed to make a very short presentation on behalf of the pro se defendant is that she presents her position for vacation of the summary judgment and the sale of the premises within the four corners of her brief, and she relies upon that in that she lived and breathed that experience through the course of the last 10 to 12 years. It is based upon my reading of the record. The default that occurred in 2011 was a process that, at least per the brief in the circumstances, was taken from the owner of the property while the payments were being made, while the insurance was being made, and there was adequate escrow to continue with the mortgage. The amount of the mortgage increased dramatically and she was unable, nothing that she did in any regard, she was unable to make the payments and therefore fell into a situation that she was subject to foreclosure and it was undertaken by the subsequent banks. In the brief itself it sets forth the circumstances of what occurred, her ability to pay the mortgage as it existed before there were different servers of her mortgage. There was representation of the defendant for some short period of time, however it was not consistent and what ultimately happened in reading the briefs is that there were motions for summary judgment. At one time the motion was vacated by the pleas, which I'm sure Mr. Gale will address, and in 2019 there was entry of summary judgment again, which based upon the briefs that were presented and the brief presented by the appellant, there were inconsistencies at the least in the affidavits, in the material filed by the bank, that that in and of itself created material questions as to fact, reasonable fact that should have been adjudicated on its merits. Based upon the totality of all of this, I believe, Your Honors, is the circumstances of the aging owner, her financial situation, and inabilities obviously to have counsel familiar with the law of foreclosure and default, and as a result of that there was a foreclosure and there was a sale of the property. I would respectfully request that consistent with the brief that's presented by the appellant, that the foreclosure and the defaults in summary judgments be vacated so she can have a hearing in court regarding the positions of the bank of why they did what they did, why they placed her in an untenable position to pay her mortgage payments, which she had been doing for years without ever being in arrears. It is really simply that. So that I would ask you to read thoroughly the brief and the understanding of whether or not this should have a hearing in open court with the evidence provided by the bank for what they did, why they did, which ultimately led to the sale of her home. So, Mr. Mahoney, the record does not reflect why the escrow amount was increased in 2011. Is that accurate? Yes, sir. Anything else? Thank you very much. Thank you for your attention. You're welcome. And you'll have time to reply. Counsel, you may respond. Thank you, Your Honor. May it please the Court. I'm Todd Gale. I'm here on behalf of the Appellee HSBC Bank as trustee. Your Honors, nearly six years passed from the filing of the complaint in this foreclosure matter and the entry of summary judgment that we're here today to discuss, and two more years passed from the entry of summary judgment until the confirmation of the sale of the property, which is the second issue that's before the Court. I want for us to separate out those two strands and talk first about whether summary judgment was appropriately granted and entered on behalf of plaintiff foreclosing bank and then talk later about the motion for confirmation of the sale because we're talking about two different standards and we're talking about two different sets of precedent. It bears noting that the appellant, Ms. Sestak, had successfully previously reversed two other entries of summary judgment in this case. At C-477 of the appellate record compiled by the Circuit Court, on April 3rd of 2017, a judgment of foreclosure and the sale of the property was vacated. Then, nearly two years later, on January 28th of 2019, again, a judgment of foreclosure and a motion for summary judgment was vacated. That can be found at the record at C-620. At that time in January of 2019, what the Circuit Court did was vacate the summary judgment that had been entered and grant to the now appellant, then defendant, more time to respond to the summary judgment motion. The summary judgment motion was filed in September of 2018 and ultimately, rather than file an opposition that included a counter affidavit, the appellant chose instead to file a motion to strike. So, at the time that she was to file her opposition to the motion for summary judgment, she filed a motion to strike. That motion to strike did not include a counter affidavit. The practical effect of that was the affidavit in support of summary judgment, which was executed by Francis Boothny on behalf of HSBC Bank as trustee, that went in unopposed. So there were no opposing facts. And the Illinois law is clear in the cases that we cite in our brief that if summary judgment is properly supported by an affidavit, the defendant must come back with facts to rebut it. That did not happen on the schedule set by the Circuit Court. Instead, the first step taken by the appellant was to file a motion asking for additional discovery. Remember, this was after the case had been pending for more than five years. She asked for additional discovery. That motion was denied. Then, on the date that she was to file an opposition to summary judgment, she instead filed a motion to strike. A hearing was held, and the court determined that it would take the motion to strike as her opposition to summary judgment. Then, several weeks later, the plaintiff, HSBC Bank as trustee, filed its reply in support of summary judgment. At that point, the briefing was closed. There was no motion, nor was there an order, granting a surreply to the defendant, to the appellant. But she did later file an opposition. But it was out of time. And so, the briefing that was ordered by the Circuit Court on the summary judgment motion did not include a counteraffidavit or any facts put in to the record on summary judgment before the Circuit Court to oppose the facts in the affidavit of Frances Boothny. That affidavit went in unopposed, and summary judgment was properly granted because there were no opposing facts. Then, some two years later, a motion to confirm sale was filed. That motion was sent to the address for the defendant, now the appellant. It was addressed not to her name. It was addressed to unknown owners and non-record claimants. But it went to the address that she put on her pro se appearance, which can be found in the record at C486 and 487. That's the same address, for what it's worth, that she includes on the cover of her appellate briefs that have been filed in this court. So when that notice was sent out of the motion to confirm the sale of the property, it was, in fact, sent to her. It was sent to the only address that the court had for her, that the plaintiff had for her. But on the service list, and I'm guessing on the envelope, and the envelope is not part of the record, it was made out not to Adeline Sestak. It was made out instead to unknown owners and non-record claimants. But she got it. And we also know that she got it because four days later, she filed an emergency motion asking for additional time to respond to it. That didn't drop from the sky. She had to have noticed that the hearing was happening in order for her to have done that. So we know that she got notice. And now, when you look at the Illinois Mortgage Foreclosure Law, there are only four bases on which the court can refuse to confirm a sale. The Illinois Mortgage Foreclosure Law at section 15-1508, subsection B, makes clear that the court shall confirm the sale unless notice of the sale was not given, the terms of the sale were unconscionable, the sale was conducted fraudulently, or justice otherwise was not done. Nowhere in the briefs before your honors, before this court, does the appellant make any argument other than justice was not done. She does not argue that notice of the sale was not given, that the terms of the sale were unconscionable, or that the sale was conducted fraudulently. She argues instead that justice was not done. She says justice was not done for two reasons. One is that the notice that was mailed to her address that was on her pro se appearance was addressed to unknown owners and non-record claimants rather than to Adeline Sestak. But she got it, and she filed an emergency motion four days later asking for additional time. And she sent a lawyer to the hearing to tell the court that she had filed that emergency motion. So she had notice of the sale. She knew that it was happening, and she not only filed an emergency motion asking for more time, but also sent a lawyer to appear for her in court. The other arguments that she makes go back to the merits of the litigation. The other arguments she makes have nothing to do with confirming the sale. She is rehashing her arguments on summary judgment. The Illinois law is clear, though, including in the cases that she cites in her own briefs. The McCluskey case from the Supreme Court in 2013 and the Deutsche Bank v. Cortez case in 2020. When talking about and evaluating whether or not justice was done in confirming the sale of the property, those arguments cannot be based on even a meritorious defense that could have been raised to the judgment of foreclosure itself. So at the end of the day, we have a motion for summary judgment that was properly granted because no facts were asserted in opposition to it pursuant to the briefing schedule set forth by the court. More than five years after the lawsuit was filed and after the appellant, their defendant, had successfully twice reversed summary judgments against her. So summary judgment was granted appropriately. And the motion to confirm sale, the court did not abuse its discretion in granting it because it was very limited by statute. It shall confirm the sale unless one of the four noted objections in the statute are sustained. And none of them were, nor could they have been. If there are no questions. I guess, so what you're saying, what you're saying is under, under the Code of Sole Procedure and Supreme Court Rule 11, that the notice was contained in an envelope that was addressed to non-record, I'm sorry, unknown occupants and non-record. That that is sufficient, that is sufficient under the law. What I'm saying is this. Under the Illinois Mortgage Foreclosure Law, in order for the court to not confirm the sale, one of four things has to be there. Number one is the notice. So what I'm asking is under the rules, is that notice not addressed to her, but addressed to a different party or non-party? Is it your position that it is sufficient to proceed forward? I guess that's my question. Yes, I believe that it is. And the notice, in fact, was Give a case to cite specifically on that issue. I don't understand it here today. No, sir, I don't. I can say that she did actually get notice because four days later she filed an emergency motion asking for more time. And she sent a lawyer to the hearing. I understand that. Okay. For it, arguably, one might say lawyers are speculating what happened. Because you say she must have gotten notice, that notice. What if she abided by the law and didn't open someone else's mail? Maybe she got online, as everyone does today, and found out about the hearing because she jumped on the computer. And then panicked and said, I need a lawyer to go and get me a continuance. So the notice wasn't addressed to her, and she sent a lawyer for one reason. I need more time. Because your proposition, you have to admit, speculates on exactly how she ended up deciding four days out to get a lawyer there. Oh, yes, sir. All right. That's why I asked if you had a case on that piece of the notice. No, I understand. I understand, Your Honor. I do. And, again, we don't have the envelope. I don't know what the envelope address said. It's also at least possible that the envelope address said Adeline Sestak. We don't know. What we have is the proof of service that was attached to the motion. And the proof of service was that it was to her address, and it said to unknown occupants and non-record claimants. And we also know from her briefs before this court and from other things that are in the appellate record assembled by the circuit court that this had happened before. Right? That apparently at some point there was some sort of fly in the ointment from when her lawyer had withdrawn. And so her prior counsel, who had withdrawn sometime before, was included on the service list. And that includes this notice. That includes this notice, too. Right. So her attorney was no longer her attorney. He got the envelope. Right. It was a proof of service. Yeah. Well, we assume he got the envelope. Again, we don't know from the record either. But that's what the proof of service says, and that wasn't the first proof of service in the record below that showed the same thing. And so, again, it is all speculation. But perhaps that's why she might have opened it up, because she saw that it came from the foreclosure firm that she had been opposite for the last five years. Sure. But to answer your question directly, I don't have a case. Thank you. Yes, sir. Okay. Well, thank you, counsel. Thank you for this matter. Counsel, you may reply. If I may approach, take a little while, please. Sure. The affidavit that was filed late in this matter and before the entry of summary judgment is the affidavit of the pro se defendant. It appears on page 755 of the materials that were presented to the court. It is the two-page affidavit of the defendant regarding her circumstances of not being able to pay the mortgage, the increase which sets forth the facts of what occurred as the premise to the default being entered, and then the ultimate garnishment or foreclosure. Excuse me. That's all I have. Thank you very much. Thank you, counsel. Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and written disposition.